UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:15CR00441 CDP/NCC |
| | ) | |
| TERRANCE WILSON, | ) | |
| a/k/a "Mutt," and | ) | |
| DONALD STEWART, | ) | |
| a/k/a "O.G.," | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, TO OBTAIN A BILL OF PARTICULARS WITH RESPECT TO COUNTS I, II, III AND IV OF THE INDICTMENT

COMES NOW the United States of America by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Dean R. Hoag and Michael A. Reilly, Assistant United States Attorneys for the Eastern District of Missouri, and for its response to Defendants' Motions to Dismiss the Indictment or, in the Alternative, to Obtain a Bill of Particulars with Respect to Counts I, II, III and IV of the Indictment (Doc. # 67, "Wilson's Motion to Dismiss;" and Doc. # 74, "Stewart's Motion to Dismiss," respectively), states as follows:

## I.   INTRODUCTION

Defendants' separately filed but identical Motions to Dismiss, and alternatively for a Bill of Particulars should be denied.   The superseding indictment charges Defendants with the following offenses:   (1) conspiracy to distribute and possess with the intent to distribute cocaine and heroin, in violation of Title 21, U.S.C. §§ 841(a)(1), and 846; (2) use of a firearm in relation

to the drug trafficking murder of Ronald James, in violation of Title 18, U.S.C. §§ 2, 924(c) and (j); (3) use of a firearm in relation to the drug trafficking murder of Michael McGill, in violation of Title 18, U.S.C. §§ 2, 924(c) and (j); and (4) use of a firearm in relation to the drug trafficking murder of Darrion Williams, in violation of Title 18, U.S.C. §§ 2, 924(c) and (j).

The superseding indictment is valid on its face, and the Motion to Dismiss should be denied.   Conspicuously absent from the Motions to Dismiss is any allegation that the superseding indictment omits a material element any of the charged offenses. Defendants' alternative Motion for a Bill of Particulars is nothing more than a discovery device.   The Government has and will continue to provide discovery to Defendants, including some form of early Jencks material, subject to the determination of the Government's Motion for a Protective Order.   Due to the nature of this case, including the charges and the uniquely violent background of the Defendants and their associates, the anticipated provisions for early Jencks are tantamount to a liberal discovery policy, which mitigates any need for a bill of particulars.

## II.   ARGUMENT

### A.   The Motions to Dismiss the Indictment Should Be Denied

Defendants' Motions to Dismiss entirely fail to set forth a basis upon which the superseding indictment should be dismissed.   Defendants do not allege that any material element of the indictment has been omitted.   Defendants allege the indictment is "generic," and "there are no specifics."   Such allegations, that the indictment is "generic," and does not contain "specifics," are irrelevant under the applicable standard of review, *infra*.   Each count alleges the material elements of the offense, and is legally sufficient.   Moreover, not only does Count I charge the offense of conspiracy to distribute and possess with the intent to distribute controlled substances,

2

it contains a "Manner and Means" section outlining the umbrella of conduct by the Donald White Drug Trafficking Organization ("White DTO"), under which Defendants Wilson and Stewart committed the murders charged in Counts II, III, and IV.   Donald White is identified in the superseding indictment as "Conspirator One."

## 1. **Standard of Review**

To be legally sufficient on its face, an indictment must (a) contain all essential elements of the charged offenses, (b) fairly inform the defendant of the charges against which the defendant must defend, and (c) allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution.   See U.S. Const. Amends. V and VI; Fed. R. Crim. P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Mastrandrea, 942 F.2d 1291, 1293 (8th Cir.1991), cert. denied, 502 U.S. 1074 (1992); United States v. Resendiz-Ponce, 549 U.S. 102 (2007).

Detailed allegations are not required under Fed. R. Crim. P. 7(c)(1).   Resendiz-Ponce, 549 U.S. at 109.   Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."   It is sufficient to state an offense by setting forth the words of the statute itself in the indictment.   United States v. Graham, 585 F.Supp.2d 1144, 1147 (D.S.D. 2008); United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988).   The court must determine only whether the indictment is valid on its face.   Costello v. United States, 350 U.S. 359, 363 (1956).   The indictment is sufficient if it tracks the language of the statute and contains all of the elements of the crime.   United States v. Donahue, 948 F.2d 438, 440–41 (8th Cir. 1991).   An indictment is insufficient only if a substantive, essential element is omitted.   United States v. Sewell, 513 F.3d

3

820, 821 (8th Cir. 2008).   Moreover, "[a]n indictment should not be read in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'"   United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998).

### 2.  **Essential Elements of the Charged Offenses**

### **Count I**

Count I charges that Defendants conspired to distribute and possess with the intent to distribute cocaine and heroin, in violation of Title 21, U.S.C. §§ 841(a)(1), and 846.   The essential elements of a § 846 conspiracy are that each defendant (1) knowingly (2) agreed with another (3) to "commit an offense defined in this subchapter."   United States v. Moore, 639 F.3d 443, 446-47 (8th Cir. 2011); United States v. Anderson, 2014 WL 11394981 at *1 (E.D. Mo. Sept. 5, 2014); United States v. McMillin, 2015 WL 778866 at *10 (W.D. Mo. Feb. 24, 2015).

Count I alleges in part, that Defendants:

> did knowingly and intentionally conspire, combine, confederate and agree, with other persons, both known and unknown to the federal grand jury, including Conspirator One, to commit offenses against the United States, to wit: (1) to knowingly and intentionally distribute and possess with the intent to distribute cocaine, a Schedule II controlled substance drug; and (2) to knowingly and intentionally distribute and possess with the intent to distribute heroin, a Schedule I controlled substance drug.
> In violation of Title 21, United States Code, Sections 846 and 841(a)(1), and punishable under Title 21, United States Code, Section 841(b)(1)(C).

Count I also alleges (a) a time period, beginning in or about June 2007 and continuing up and to the date of the indictment; (b) that Defendants conspired with each other and others, including Conspirator One (Donald White); and (c) specific facts describing the "Manner and

4

Means" of the conspiracy.   Count I alleges all the essential elements of the charged conspiracy to violate Title 21, U.S.C. § 841(a)(1).

Count I is described as to its manner and means:

### MANNER AND MEANS

1.  Conspirator One was a St. Louis-based cocaine and heroin distributor, who obtained distribution quantities of cocaine and heroin, by various means, which he then distributed to others in exchange for United States currency within the Eastern District of Missouri.

2.  Conspirator One enlisted sources of supply to obtain cocaine and heroin through means routinely utilized by illegal drug traffickers, such as the development of traditional relationships with source(s) of supply in which Conspirator One, or his associates, delivered United States currency to the source(s) of supply in exchange for illegal controlled substances, including cocaine and heroin.

3.  Conspirator One also engaged in drug trafficking robberies and/or dealings with other drug traffickers in which Conspirator One and his associates would rob other drug traffickers of controlled substances and United States currency.

4.  On some occasions, Conspirator One entered into drug trafficking agreements, accepted United States currency, but did not deliver an illegal controlled substance in exchange for the United States currency as previously agreed upon by Conspirator One.

5.  Conspirator One routinely enlisted other persons to perform acts of violence in furtherance of and in relation to drug trafficking activities.

6.  Conspirator One maintained relationships with a number of associates, including **TERRANCE WILSON, a/k/a "Mutt," and DONALD STEWART, a/k/a "O.G.,"** who acted in furtherance of Conspirator One's drug trafficking activities, including by engaging in violent acts in furtherance of said drug trafficking activities.

5

7.     **TERRANCE WILSON, a/k/a "Mutt," and DONALD STEWART, a/k/a "O.G.,"** acted as enforcers and shooters for Conspirator One and his associates.

8.     **TERRANCE WILSON, a/k/a "Mutt," and DONALD STEWART, a/k/a "O.G.,"** routinely received consideration, specifically United States currency and other items of value from Conspirator One and his associates for engaging in acts of violence related to illegal drug trafficking crimes.

The manner and means section of the conspiracy supplements the allegation containing the basic elements and provides a general outline of the conspiratorial activities of the White DTO. Paragraphs 6-8 provide a detailed allegation of Defendants' role in the conspiracy:  Defendants were shooters and enforcers for the White DTO.  Within their role as shooters and enforcers, Defendants committed multiple violent acts, including but not limited to the murders alleged in Counts II, III, and IV, in furtherance of the drug trafficking conspiracy charged in Count I.

### Counts II, III, and IV

Counts II, III, and IV charge three separate offenses for the use of a firearm to commit murder in furtherance of drug trafficking in violation of Title 18, U.S.C. §§ 924(c) and (j).   18 U.S.C. § 924(c)(1)(A) provides:

> any person who, during and in relation to any crime of violence or drug trafficking crime … for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall … be sentenced to a term of imprisonment of not less than 5 years …

§ 924(j)(1) provides:

> [a] person who, in the course of a violation of subsection (c) causes the death of a person through the use of a firearm, shall … if the killing is a murder (as defined in section 1111) be punished by death or by imprisonment for any term of years or for life …

6

A murder in violation of § 924(j)(1) requires that (1) defendant committed the predicate drug trafficking offense; (2) that during and in relation to the underlying offense the defendant knowingly used or carried a firearm; and (3) that in the course of using that firearm, defendant committed a murder.   United States v. Wallace, 447 F.3d 184, 816, 187 (2nd Cir 2006); United States v. Martinez, 2008 WL 700321 at * 3, 4 (D. N.D. March 13, 2008).

Counts II, III, and IV allege in part, that Defendants:

> "acting together and with others, known and unknown, including Conspirator One, did knowingly possess one or more firearms in furtherance of the commission of a drug trafficking crime for which they may be prosecuted in a court of the United States, to-wit: conspiracy to distribute and to possess with the intent to distribute controlled substances, including heroin and cocaine, as Charged in Count I herein."

Thus, in Counts II, III, and IV, the superseding indictment alleges Defendants participated in a predicate drug trafficking crime, as alleged in Count I.   At the risk of stating the obvious, Defendants violent acts in furtherance of the conspiracy, standing alone, place them in the conspiracy.   The superseding indictment further alleges in each count that in the course of the predicate drug trafficking crime, that defendants caused the death of Ronald James, Michael McGill, and Darrion Williams, Jr., "through the use of one or more firearms."   Finally, as to Counts II, III, and IV, the superseding indictment specifically alleges that each killing is murder as defined by 18 U.S.C. § 1111:

> And in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendants, acting together and with others, with malice aforethought, unlawfully killed (Ronald James, Michael McGill, and Darrion Williams, Jr.) by shooting him with one or more firearms, willfully,

7

deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Sections 2 and 924(j).

Counts II, III, and IV (1) comply with Rule 7(c)(1); (2) contain all of the essential elements of a murder in violation of § 924(j)(1); and (3) specify the date of the murder, and the name of the murder victim, sufficient to allow a defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution.   The superseding indictment as to all counts is valid on its face and Defendants' Motions to Dismiss should be denied.

**B.   The Motions For A Bill Of Particulars Should Be Denied**

Defendants are not entitled to a bill of particulars, and their motions are nothing more than a discovery device.   The Motions for a Bill of Particulars should be denied because (1) the superseding indictment is legally sufficient and specific; (2) as set forth herein, discovery has been or will be provided; and (3) Defendants are requesting that the Government be required to state how the Government intends to prove its case, which is beyond the scope of what the Government is required to produce.

**1.   Legal Standards**

The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial.   United States v. Huggans, 2011 WL 3611604, at *5 (8th Cir. Aug. 18, 2011); United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009); United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir.2002), cert. denied, 537 U.S. 1134 (2003). The purpose of a bill of particulars is not to provide a defendant with evidentiary detail or discovery regarding the government's case.   United States v. Shepard, 462 F.3d 847, 860 (8th Cir.), cert. denied, 549 U.S.

8

1099 (2006); United States v. Wessels, 12 F.3d 746, 750 (8th Cir.1993), cert. denied, 513 U.S. 831 (1994); United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990) ("discovery oriented" bill of particulars properly denied); United States v. Matlock, 675 F.2d 981, 986 (8th Cir. 1982).

Federal trial courts have broad discretion as to whether to grant a bill of particulars.   Will v. United States, 389 U.S. 98-99 (1967); United States v. Sileven, 985 F.2d 962, 966 (8th Cir.1993); United States v. Stephenson, 924 F.2d 753, 762 (8th Cir.), cert. denied, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).

Although a defendant's constitutional rights under the Fifth and Sixth Amendments require that he or she be informed of the nature of the offense charged to allow him to prepare a defense and to protect his double jeopardy rights, they do not require the government to reveal the details of how it plans to prove its case.   United States v. Glecier, 923 F.2d 496, 502 (7th Cir.), cert. denied, 502 U.S. 810 (1991).   A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case. United States v. Dunn, 841 F.2d 1026 (10th Cir.1988).   Demands for particular information with respect to where, when, and with whom are routinely denied.   United States. v. Guerrero, 669 F.Supp.2d 417, 426 (S.D.N.Y. 2009); United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001).   A request for the when, where, and how of every act in furtherance of the conspiracy is equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars.   United States v. Giese, 597 F.2d 1170 (9th Cir.), cert. denied, 444 U.S. 979 (1979).   A request to pin the government down to specific violations to be proved at trial is not a proper ground for granting a bill of particulars.   United States v. Payden, 613 F. Supp. 800, 818 (S.D.N.Y 1985).   The government may not be compelled to provide a bill of particulars disclosing the manner in which

9

it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories. United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y 1993).

### 2.  The Merits

#### a.  The Superseding Indictment Makes Specific Allegations

Defendants have requested particulars, many of which are already specified in the superseding indictment.   (See Defendants Wilson's Motion, pp. 5, 6; Defendant Stewart's Motion, pp. 4, 5).   Defendants joined the Donald White conspiracy in 2007, and further assisted Donald White in the murders of Ronald James and Michael McGill.   Defendants further assisted Donald White and Jerome Lewis in relation to the use of a firearm to murder Darrion Williams, Jr.   The superseding indictment specifies their role: that Defendants were shooters and enforcers for the Donald White DTO.   The superseding indictment alleges that Defendants acted together to use firearms to commit murders in furtherance of the drug trafficking conspiracy charged in Count I, these are specific acts that Defendants took in furtherance of the conspiracy.

#### b.  Discovery Has Been and Will Be Provided

The Government has provided some discovery, and is making provisions for some form of early Jencks production in this case, subject to significant witness safety concerns.[1]   This is an

---

1   The Government has disclosed, among other things, police reports, laboratory reports regarding ballistics and other scientific evidence, crime scene photos, autopsy reports and other material. The disclosures have involved approximately 1,900 pages of investigative reports, and in excess of 800 photographs, and miscellaneous electronic evidence.   It is disingenuous for Defendants to assert that they do not know what types of firearms were used in the offenses when reports detailing the caliber of firearms used in the offenses have been disclosed.   The Government has not yet disclosed sensitive statements that fall under the Jencks Act.

organized crime element that robustly enlists others to murder people, making witness safety concerns much more than a hypothetical discussion.   In view of the security concerns set forth below, the anticipated production of early Jencks statements is liberal discovery in the context of this particular case.   Liberal discovery by the government favors denial of a bill of particulars. United States v. Stephenson, 924 F.2d 753, 761-62 (8th Cir.), cert. denied, 502 U.S. 916 (1991); United States v. Maull, 806 F.2d 1340, 1345-46 (8th Cir. 1986), cert. denied, 480 U.S. 907 (1987).

Witness testimony will be a key element of the Government's proof in this case. The Government is in the process of balancing the desire to produce some form of early Jencks material in this case against the significant threat presented to the witnesses in this case.    With this in mind, the Government has filed its Motion for a Protective Order to help facilitate the production of some early Jencks material while mitigating the potential threat to witnesses.   An examination of some of the history of the Defendants and the White organization provides context to the significant witness safety concerns present in this case.

The Government offers the following information to support that it would be warranted to petition the Court to strictly follow the timing requirements for disclosure of witness statements set forth in 18 U.S.C. § 3500(a) ("… no statement or report in the possession of the United States which was made by a Government witness … shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.") However, the Government intends to some provide early Jencks production subject to the determination of the Government's Motion for a Protective Order.

In addition to the acts charged in the indictment, the investigation reveals that Defendants and their associates have committed multiple acts of violence, over an extended period of time.

Defendants are closely associated with the Donald White Drug Trafficking/Murder For Hire Organization.   The investigation reveals that Donald White was involved in each of the three murders alleged in the superseding indictment, including enlisting Defendants to commit the crimes.   Defendants are also closely associated with Christopher Spates, another shooter in the White organization.   The evidence will show that Defendants acted with Christopher Spates during the shooting of Darrion Williams, Jr., resulting in the death of Williams.

In 2014, Leon Moss, Christopher Spates and Donald White were convicted of murder first degree and armed criminal action, in the separate murder of Angie Young, a witness, in St. Louis Circuit Court in cause numbers 1222CR 420, 421, and 422.   Leon Moss hired White and Spates to kill Angie Young who was a witness against Moss in a domestic violence case.   The state judge sentenced all three defendants to a life sentence without the possibility of parole for the offense of murder in the first degree, and a consecutive sentence of thirty years for the offense of armed criminal action.   The investigation of the Young murder for hire revealed that White communicated with underlings via a contraband cellular telephone while incarcerated.   Members of the White organization have routinely demonstrated that they are capable of acting through other persons, including by putting hits or contracts on other persons.

There is little reason to doubt that Defendant Wilson would cause harm to witnesses where his own freedom is at stake.   A simple examination of Wilson's criminal background allows one to conclude that he acts with extreme violence with little regard for others, including those with whom he has personal relationships.   Defendant Wilson has a significant history of violence, including participating in paid "hits" not charged in the superseding indictment.   The Government anticipates that evidence will show that on March 26, 2010, Defendant Wilson shot Michael

McGill approximately twenty times with a 9 mm pistol with an extended magazine.   There will be evidence that as Wilson stood over McGill and continued to shoot him, another person had to encourage Wilson to stop shooting.

Also of particular concern are the facts surrounding Defendant Wilson's previous convictions for endangering the welfare of a child, resisting arrest, leaving the scene of an accident, and armed criminal action, all felony offenses, for which he was convicted and sentenced to prison on January 9, 2013, in the Circuit Court of St. Louis City in Cause number 1022CR5314.   The investigation in that case revealed that Wilson would have run over his own son while trying to escape from police if the officers had not removed Wilson's son from the path of the vehicle that Wilson was driving.   SLMPD officers also investigated Wilson for the March 2012 kidnapping and forcible rape of a domestic partner, wherein the victim was transported across a state line. Investigators photographed the victim, who sustained facial injuries consistent with having been beaten. State charges were filed but later dismissed.   Further heightening the Government's concerns for witness safety is that the Government is familiar with the forcible rape/kidnapping investigation and has a good faith basis to conclude that the availability of the witness was the essential issue in this serious crime.   There will be a female cooperating witness in this case.

The Government anticipates that the evidence will show that on July 28, 2009, Defendant Stewart utilized a 7.62 caliber rifle to murder Ronald James on behalf of the Donald White organization.   The evidence will show that Defendant Stewart, among other things, helped organize, attended, and encouraged the March 26, 2010, murder of Michael McGill.   The Government anticipates that the evidence will show that Defendants Wilson and Stewart, among others, helped organize the July 23, 2010 shooting of Darrion Williams, Jr., which resulted in the

13

later death of Williams on October 27, 2010.   The evidence will show that Defendant Stewart and

Christopher Spates shot Williams with pistols.[2]   Due to the manner of the execution of the plan to

shoot Williams, Defendant Wilson was unable to utilize the rifle which he had brought to the scene

to shoot Williams.

Stewart has been convicted of offenses including manslaughter committed on or about May

23, 1983, for which he was sentenced to six months confinement in the Circuit Court of the City

of St. Louis in cause number 831-1313A.

Based upon the totality of the circumstances, a bill of particulars is not warranted in this

case.   It is anticipated that the Government will make an early production of significant Jencks

materials, subject to protective procedures being adopted.

WHEREFORE, for the reasons stated herein, the Government respectfully requests that

Defendants' Motions to Dismiss and for a Bill of Particulars be denied in all respects.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


*s/ Michael A. Reilly*
DEAN R. HOAG, #23843MO
MICHAEL A. REILLY, #43908MO
Assistant United States Attorneys
111 South 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

---

[2]  As set forth above, this is the same Christopher Spates convicted of murdering a female witness
in a state prosecution.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

<u>*s/ Michael A. Reilly*</u>
DEAN R. HOAG, #23843MO
MICHAEL A. REILLY, #43908MO
Assistant United States Attorneys

15